Brendan Cummings (CA Bar No. 193952)
Center for Biological Diversity
P.O. Box 549
Joshua Tree, CA 92252
Phone: (760) 366-2232; Facsimile: (760) 366-2669
Email: bcummings@biologicaldiversity.org

Miyoko Sakashita (CA Bar No. 239639)
Andrea Treece (CA Bar No. 237639)
Center for Biological Diversity
1095 Market St., Suite 511
San Francisco, CA 94103
Phone: (415) 436-9682; Facsimile: (415) 436-9683
Email: miyoko@biologicaldiversity.org
       atreece@biologicaldiversity.org

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF CALIFORNIA

C 07 5109

CENTER FOR BIOLOGICAL DIVERSITY, a non-profit organization, and TURTLE ISLAND RESTORATION NETWORK, a non-profit organization;

Plaintiffs,

v.

DIRK KEMPTHORNE, Secretary, United States Department of Interior; UNITED STATES FISH AND WILDLIFE SERVICE;

Defendants.

Case No.:

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COMPLAINT

**I.      INTRODUCTION**

1. This is an action challenging the failure of Defendants Dirk Kempthorne, Secretary of Interior, and the United States Fish and Wildlife Service (collectively "the Service") to comply with their non-discretionary obligations under the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361 *et seq.* Specifically, the Service has failed to issue updated stock assessment reports for marine mammals under its jurisdiction—sea otters, polar bears, walrus, and manatees—within the timeframes mandated by the statute. 16 U.S.C. § 1386(c).

2. To ensure the conservation of marine mammals, the MMPA requires that the Service prepare stock assessments for marine mammal populations under its jurisdiction. These stock assessment reports provide valuable information on the range, population, threats, and status of each marine mammal population or stock. These reports have actual legal effect as they set acceptable levels of human-caused serious injury and mortality to marine mammal populations from commercial fisheries, oil and gas authorizations, and other activities that can be authorized under the MMPA.

3. Because good decision-making requires accurate information, the MMPA further requires that the Service update the stock assessment reports annually for certain vulnerable stocks, and once every three years for all other marine mammal stocks.

4. More than five years have elapsed since the Service has revised any of its stock assessment reports. For some species, the stock assessments have not been revised for over a decade. During this time, significant new information about the status of these marine mammal populations has become available. For example, global warming has caused the loss of sea ice upon which the polar bear and walrus depend while disease outbreaks have impacted sea otters in California and Alaska as well as manatees in Florida.

5. The Service's failure to update the stock assessment reports for sea otters, polar bears, walrus, and manatees has resulted in agency decision-making that ignores the best available information on the status of these vulnerable marine mammal species, and deprives them of protections vital to their conservation.

6. Plaintiffs seek declaratory and injunctive relief requiring the Service to comply

COMPLAINT

with its nondiscretionary duty under the MMPA to review, revise, and make available to the public updated stock assessment reports by a date certain.

## II.     JURISDICTION, VENUE, and INTRADISTRICT ASSIGMENT

7.     This Court has jurisdiction over this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706, 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (action against the United States), 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his or her duty), and 28 U.S.C. §§ 2201-02 (power to issue declaratory judgments in cases of actual controversy).  An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

8.     Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because at least one plaintiff resides in this judicial district, and the violations alleged in this Complaint address a species, the California sea otter, which resides in this judicial district.

9.     Pursuant to Civil Local Rule 3-2(c), the appropriate intradistrict assignment of this case is to either the San Francisco Division or the Oakland Division.

## III.     PARTIES

10.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a nonprofit corporation with offices in San Francisco, California and elsewhere in the United States dedicated to the preservation of biodiversity, native species, and ecosystems. The Center's Ocean Program focuses on the protection of marine species and their ocean habitats, including significant efforts to ensure the conservation of marine mammals. The Center has worked extensively to protect the polar bear, sea otter, walrus, and manatee from threats to their survival and recovery; this includes, *inter alia,* efforts to ensure Endangered Species Act protections for polar bears and sea otters in Alaska, oversight of offshore oil and gas activities affecting Pacific walrus, and actions to reduce fisheries' bycatch of California sea otters and Antillean manatees.

11.     The Center has over 35,000 members, with members who reside in and/or visit the coastal areas of California, Washington, Florida, Puerto Rico, and Alaska and adjoining marine waters where the marine mammals at issue in this case occur.  The Center's members and staff use these ocean and coastal areas for research, aesthetic enjoyment, observation, and other

COMPLAINT

2

1  recreational, scientific, and educational activities.

2      12.    Center members and staff have researched, observed, photographed, enjoyed the habitat, and sought protection for the polar bear, walrus, and sea otter stocks in Alaska. Center members and staff have also regularly visited the shores and waters of Washington and California to observe, study, and enjoy the California and Washington sea otters. Center members and staff have visited the habitat of the Antillean and Florida manatees, have sought to observe manatees, and have enjoyed manatees in their marine environment. Center members will continue to visit those areas in the future to appreciate these marine mammals and their ocean and coastal environment. Center members and staff derive scientific, recreational, conservation, and aesthetic benefits from the existence of these marine mammals in the wild. The Center and its members also derive benefits from information about and opportunities for public participation concerning marine mammals. The Center brings this action on behalf of itself and its adversely affected members and staff.

    13.    Plaintiff TURTLE ISLAND RESTORATION NETWORK ("TIRN") is a non-profit corporation committed to the study, protection, enhancement, conservation, and preservation of the world's marine and terrestrial ecosystems and the wildlife that inhabit the oceans, including marine mammals. TIRN, a California corporation with its principal place of business in Marin County, California, has approximately 10,000 members throughout the United States and the world, including research biologists, eco-tour operations, professional photographers and videographers, all of whom rely on healthy populations of marine mammals in order to conduct their businesses. TIRN's members and staff regularly use the coastal waters of the western United States, Alaska, Florida and Puerto Rico for observation, research, aesthetic enjoyment, and other recreational, scientific, and educational activities. TIRN's members and staff spend time on the shores or in the waters these areas in a number of wildlife-viewing activities such as swimming, snorkeling, kayaking, scuba diving and wildlife watching. TIRN's members and staff intend to continue to study, visit and observe, or attempt to study, visit and observe, these species in the future. TIRN brings this action on behalf of itself and its adversely affected members and staff.

COMPLAINT

3

14. Plaintiffs' interests are injured by the Service's failures to review and revise stock assessment reports for marine mammals under its jurisdiction as required by the MMPA.

15. Plaintiffs are adversely affected by the Service's failure to review and revise stock assessment reports for sea otter, polar bear, walrus, and manatee stocks. Outdated stock assessments result in management decisions that are less informed and often less protective of these marine mammal populations than they would be if decision-making agencies were armed with the most recent information. Because many of these stocks have either declined since the most recent stock assessment, or are now subject to newly identified and often greater threats, the lack of updated stock assessments increases the risks to these species. Such outdated stock assessments result in activities being permitted that adversely affect the survival and recovery of these species and increase the chances that population declines and other adverse impacts to these animals will occur but will go unnoticed and/or unaddressed. Harm to the species and stocks in which Plaintiffs have an interest harms Plaintiffs and their members by reducing the likelihood that Plaintiffs and their members will be able to continue to observe, research, and enjoy these marine mammals in their natural environment.

16. Plaintiffs are also suffering procedural and informational injuries resulting from the Service's failure to review and revise marine mammal stock assessment reports. The MMPA requires that the Service review and revise stock assessment reports to ensure that the authorized take of each stock does not exceed the levels that the population can sustain. Since the population of marine mammal stocks varies over time, the MMPA requirement to review and revise stock assessment reports aims to ensure that marine mammals are not adversely affected by decisions based on obsolete information. Therefore, because Plaintiffs have a concrete interest in conserving the marine mammals in question, and the MMPA is designed to protect that interest by ensuring up-to-date stock assessments, Plaintiffs' interests are adversely affected by the Service's failure to fulfill its procedural duties under the MMPA to timely update the stock assessment reports.

17. Plaintiffs are also harmed by the Service's failure to prepare these stock assessment reports because they are unable to use the information contained in the report and are

COMPLAINT

4

unable to participate in the public comment process. The procedural requirements in the MMPA to revise the stock assessment reports were designed to promote public participation and information, as demonstrated by the public comment requirement. As Plaintiffs and their members research and promote conservation of marine mammals this information and participation is useful to Plaintiffs to carry out their organizational missions. The informational and procedural interests of Plaintiffs and their members in the reports are adversely affected by the Service's inaction.

18.     Plaintiffs' injuries can be redressed by declaratory and injunctive relief. An order compelling the stock assessment reports by a date certain will reduce the likelihood that excessive take of marine mammals will be authorized. The Service can revise the stock assessment reports and, as a result, authorized take will better reflect the limits that the stocks can sustain at this time. Therefore, it is less likely that the marine mammals at issue will be adversely affected. Moreover, requiring preparation of the reports will provide Plaintiffs access to the information in the stock assessments and an opportunity to participate by commenting on the reports.

19.     Defendant DIRK KEMPTHORNE, United States Secretary of the Interior, is the highest ranking official within the Department of Interior and, in that capacity, has ultimate responsibility for the administration and implementation of the MMPA with regard to sea otter, polar bear, walrus, and manatee stocks, and for compliance with all other federal laws applicable to the Department of the Interior. He is sued in his official capacity. Secretary Kempthorne has the authority and ability to remedy the harm inflicted by Defendants' actions.

20.     Defendant UNITED STATES FISH AND WILDLIFE SERVICE ("the Service") is a federal agency within the Department of Interior authorized and required by law to protect and manage the fish, wildlife, and native plant resources of the United States, including implementing and enforcing the MMPA. The Service has been delegated authority by the Secretary of Interior to implement the MMPA. The Service has failed to review and revise stock assessment reports for sea otter, polar bear, walrus, and manatee stocks. The Service has the authority and ability to remedy the harm inflicted by Defendants' actions.

COMPLAINT

## IV.  LEGAL BACKGROUND

21.  Congress enacted the MMPA to ensure the protection of marine mammals because of concern that "certain species and population stocks of marine mammals are, or may be, in danger of extinction or depletion as a result of man's activities." 16 U.S.C. § 1361(1). The overriding intent of the MMPA is that "such species and population stocks should not be permitted to diminish beyond the point at which they cease to be a significant functioning element in the ecosystem of which they are a part, and consistent with this major objective, they should not be permitted to diminish below their optimum sustainable population." 16 U.S.C. § 1361(2).

22.  The primary mechanism by which the MMPA protects marine mammals is through the implementation of a "moratorium on taking" of marine mammals. 16 U.S.C. § 1371(a). "Take" means "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362(13).

23.  The Service may issue permits and authorizations that allow the taking of marine mammals for certain purposes. §§ 1371 & 1374. Additionally, the MMPA includes a regime to regulate and authorize limited incidental take of marine mammals by commercial fisheries. 16 U.S.C. § 1387.

24.  The Service and the Secretary of Commerce through the National Marine Fisheries Service split implementation of the MMPA. The MMPA generally assigns responsibility over cetaceans (whales and dolphins) and pinnipeds (seals and sea lions) to the Secretary of Commerce, with the remaining marine mammal species (sea otters, polar bears, walrus, and manatees) to the Service. 16 U.S.C. § 1362(12).

25.  In 1994, the MMPA was amended by Congress. The amendments included a requirement that the Service prepare stock assessments for each marine mammal stock under its jurisdiction. 16 U.S.C. § 1386. Draft stock assessments were to be prepared by August 1, 1994, submitted to a scientific review group, and presented to the public for comment, with final stock assessments published within 90 days. 16 U.S.C. §§ 1683(a) & (b).

26.  The MMPA further mandates that the Service must periodically update stock assessment reports:

COMPLAINT

6

(1) The [Service] shall review stock assessments in accordance with this subsection—

    (A) at least annually for stocks which are specified as strategic stocks;

    (B) at least annually for stocks for which significant new information is available; and

    (C) at least once every 3 years for all other stocks.

(2) If the review under paragraph (1) indicates that the status of the stock has changed or can be more accurately determined, the [Service] shall revise the stock assessment in accordance with subsection (b) of this section.

16 U.S.C. § 1386(c). In turn, subsection (b) provides for public notice and comment procedures for stock assessments. 16 U.S.C. §1386(b).

27. A stock assessment must be based on the "best scientific information available." 16 U.S.C. § 1386. It shall include, *inter alia*, the geographic range of the stock, minimum population estimate, productivity rates, population trend, estimates of the human-caused mortality and serious injury to the stock, commercial fisheries interacting with the stock, a status category, and the potential biological removal level. 16 U.S.C. § 1386(a).

28. The potential biological removal level is the "maximum number of animals, not including natural mortalities, that may be removed from a marine mammal stock while allowing that stock to reach or maintain its optimum sustainable population." 16 U.S.C. §1362(20). The Service then uses the potential biological removal level as a factor when authorizing take of marine mammals. The potential biological removal level is also used in take reduction planning for fisheries.

29. Therefore, the stock assessment reports provide important information and form the basis of the Service's decisions authorizing the take of marine mammals. *See e.g., Marine Mammals; Incidental Take During Specified Activities; Proposed Rule*, 72 Fed. Reg. 30670 (June 1, 2007)(regulations for incidental take of walrus and polar bears during oil and gas exploration in the Chukchi Sea); *Marine Mammals; Incidental Take During Specified Activities; Final Rule*, 71 Fed. Reg. 43926 (Aug. 2, 2006) (regulations for incidental take of walrus and polar bear during oil and gas operations in the Beaufort Sea); *Notice of Receipt of Applications and Proposed Incidental Harassment Authorization*, 71 Fed. Reg. 26770 (May 8, 2006); 71 Fed. Reg. 35928

COMPLAINT

7

(June 22, 2006) (applications to take walrus and polar bear incidental to oil and gas seismic operations in the Chukchi Sea); *Marine Mammals; Incidental Take During Specified Activities; Proposed Rule Withdrawal*, 68 Fed. Reg. 24700 (May 8, 2003) (denial of incidental take of Florida manatees for watercraft activities because of new information concerning manatee stocks). The stock assessment reports may also provide important information for other government decisions affecting marine mammals and their management.

30. In sum, the MMPA places a nondiscretionary duty on the Service to review, and if necessary, revise the stock assessments at least annually for strategic stocks and for stocks for which there is significant new information, and at least every three years for all other stocks. 16 U.S.C. § 1386(c).

## V.  FACTUAL BACKGROUND

31. In 1995, the Service published a Federal Register notice announcing the availability of stock assessment reports for species under its jurisdiction. 60 Fed. Reg. 52008 (Oct. 4, 1995). These initial reports provided stock assessments for polar bears, Pacific walrus, northern sea otters in Alaska, southern sea otters in California, northern sea otters in Washington; and two West Indian manatee stocks in the southeastern United States and Puerto Rico. *Id.*

32. In 1997, the Service published a notice of the availability of *draft* revised marine mammal stock assessment reports for the southern sea otter in California, the northern sea otter in Washington State, and the Florida and Antillean stocks of West Indian manatees. 62 Fed. Reg. 20201 (Apr. 25, 1997). The Service never finalized these reports. As a result, the effective stock assessment reports for these marine mammals remain the 1995 reports which are now over twelve years old.

33. In 1998, the Service published a notice of availability of revised marine mammal stock assessment reports for Chukchi Sea polar bear, Beaufort Sea polar bear, and Pacific walrus stocks. 63 Fed. Reg. 49132 (Sept. 14, 1998). In 2002, the Service published a notice of availability of final stock assessment reports for Pacific walrus, Chukchi Sea polar bear, Beaufort Sea polar bear, and three newly defined northern sea otter stocks in Alaska. 67 Fed. Reg. 62979 (Oct. 9, 2002). The Alaska Region stock assessment reports have not been updated since and are

COMPLAINT

8

now over five years old.

34. The Service has failed to publish revised stock assessment reports since 2002 for marine mammal stocks in Alaska Region and since 1995 for the remaining marine mammal stocks. Further, the Service has not reviewed these stock assessments every three years—or annually for strategic stocks and stocks for which new information is available—as required by the MMPA.

35. The status of each of these stocks has changed since the stock assessment reports were last revised. Additionally, new information is available concerning each stock that could inform a more accurate stock assessment. The Service is aware, or should be aware, that the statuses of these marine mammal stocks have changed or can be more accurately determined. Such new information triggers the MMPA's requirement that the Service publish revised stock assessment reports. 16 U.S.C. § 1386(c)(2).

36. There are numerous examples of changed status and new information concerning each these marine mammal stocks.

37. The status of polar bear stocks has changed dramatically since 2002. New data on polar bears prompted the Service to propose listing the polar bear as threatened under the Endangered Species Act. 72 Fed. Reg. 1064 (Jan 9, 2007). Completely dependent on sea ice for survival, the polar bear's habitat is melting due to increased temperatures. This year, the National Snow and Ice Data Center reported that arctic sea ice extent had receded to levels unprecedented in the historical record. Recently, the Service reopened a comment period concerning polar bears because new research by the United States Geological Survey ("USGS") concluded that reduced sea ice would result in loss of approximately 2/3 of the world's polar bear population within 50 years. 72 Fed. Reg. 53749 (Sept. 20, 2007). While the Service is currently updating information on the polar bear under the Endangered Species Act, the agency has ignored its parallel responsibilities under the MMPA.

38. The status and available information on the walrus has also changed since 2002. Sea ice loss has affected the ice-dependent Pacific walrus stocks. Recently, scientists have observed walrus calves separated from their mothers in deep waters under conditions of rapid sea-

COMPLAINT

9

ice retreat. The Service is also conducting surveys on Pacific walrus abundance in Alaska and Russia. In spite of this new information, the Service has issued authorizations allowing take of Pacific walrus based on the outdated stock assessments.

39. Since publishing the 2002 stock assessment reports for Alaska, the Secretary of Interior has approved expanded offshore oil and gas development in Alaska that affects polar bear, Pacific walrus, and sea otter stocks.

40. The status of the southwest Alaska northern sea otter stock has also changed since the last stock assessment report in 2002. In 2005, the Service listed the southwest Alaska stock of northern sea otter as a threatened species under the Endangered Species Act. 70 Fed. Reg. 46366 (Aug. 9, 2005). The decline of that sea otter population has continued. The other sea otter stocks in Alaska have also experienced changes since 2002. For example, the Service noted an unusual mortality event due to a significant increase in sea otter deaths in Kachemak Bay in recent years. Fish and Wildlife Service, Press Release, *Unexplained Die-off Among Kachemak Bay Sea Otters* (Sept. 12, 2006). An unusual mortality event is "a stranding that is unexpected; involves a significant die-off of any marine mammal population; and demands immediate response." 16 U.S.C. § 1421(h).

41. While the Service has violated the MMPA's deadlines with regard to marine mammal stocks in Alaska, the agency's violations of law are even more egregious outside of Alaska.

42. In 1997, the Service determined that it was appropriate to revise reports for the California southern sea otter, Washington northern sea otter, and the two stocks of West Indian Manatees. 62 Fed. Reg. at 20201. Accordingly, the Service prepared *draft* revised stock assessment reports. *Id.* However, those reports never became final and therefore the 1995 stock assessment reports are still in force.

43. Despite the Service's knowledge that the 1995 status assessment reports need updating, the Service has flouted its duty under the MMPA to revise these reports.

44. The status of manatee stocks has changed since 1995; however, the Service has never updated the manatee stock assessment reports. In 2003, the Service acknowledged that new

COMPLAINT

10

information on manatee stocks prevented it from authorizing taking of manatees for watercraft and watercraft access facilities. 68 Fed. Reg. at 24700, 24702. In the years 2002, 2003, 2005, 2006, and 2007, unusual mortality events have been declared for Florida manatees. The year 2006 marked one of the most deadly years for manatees with excessive watercraft related deaths in Florida. Manatees in Puerto Rico also face increasing threats from ship strikes. In 2006, a single watercraft collision killed five adult manatees in San Juan Bay, when a vessel struck a mating herd. Moreover, increasing frequency and intensity of tropical storms may cause stranding and calf separation for manatees.  As with the polar bear, the Service has gathered new information on the manatee for purposes of the Endangered Species Act, but the agency has failed to incorporate this new information into revised MMPA stock assessments.

45. The population status of sea otters in California and Washington has also changed since 1995. Since the 1995 stock assessment for California southern sea otters, USGS surveys reported that the sea otter population improved for several years and then dipped again recently. Disease outbreaks have also affected this sea otter stock. Surveys of the Washington stock of northern sea otters have also shown population changes since the 1995 assessment.

46. The Service's reliance on outdated stock assessment reports for take authorization and other management activities is likely resulting in adverse effects on the marine mammals stocks it is charged with protecting. The level of take a population can sustain is determined in the stock assessment reports through the potential biological removal level.  Additionally, other valuable information about distribution, threats, and population trends is vital for the management of these marine mammal stocks.  Consequently, the reliance on old reports leaves the Service poorly equipped to determine if authorized take is consistent with MMPA objectives to maintain optimum sustainable populations.  Yet, take authorizations continue.

47. Despite the changing threats and population trends of these marine mammals, the Service has not updated stock assessment reports as required by section 117(c) of the MMPA. 16 U.S.C. § 1386(c). New stock assessment reports are long overdue.

48. The Service's failure to review and revise stock assessment reports is an ongoing violation of the MMPA and the Administrative Procedure Act.

COMPLAINT

## VI. CLAIM FOR RELIEF

### (Violation of Marine Mammal Protection Act)

49. Plaintiffs reallege and incorporate by reference all the allegations set forth in this Complaint, as though fully set forth below.

50. The Service's failure to timely review and revise the stock assessment reports for two stocks of polar bears, Pacific walrus, and three stocks of northern sea otters in Alaska, one stock of the northern sea otters in Washington, the southern sea otter stock in California, and two stocks of West Indian manatee in the southeastern United States and Puerto Rico violates section 117(c) of the MMPA. 16 U.S.C. § 1386(c).

51. The Service's failure to timely review and revise stock assessment reports for each stock of marine mammals under its jurisdiction is arbitrary and capricious, and not in accordance with procedures required by law, in violation of the Administrative Procedure Act, and is subject to judicial review thereunder. 5 U.S.C. §§ 701-706.

52. The Service's failure to timely review and revise stock assessment reports for each stock of marine mammals under its jurisdiction constitutes agency action that is unreasonably delayed and/or unlawfully withheld as provided by § 706(1) of the APA, and is subject to judicial review thereunder. 5 U.S.C. §§ 701-706.

## VII. PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs respectfully requests that the Court grant the following relief.

1. A declaration that the Service violated its non-discretionary duties, and acted in a manner that is arbitrary, capricious, or otherwise not in accordance with law, and constitutes agency action that is unreasonably delayed and/or unlawfully withheld when it failed to review and revise the stock assessment reports for each marine mammal stock under its jurisdiction within the timeframe dictated by the MMPA;

2. An order compelling the Service to revise stock assessment reports for polar bear, Pacific walrus, and northern sea otter stocks in Alaska, southern sea otters in California, northern sea otters in Washington, Florida manatees, and Puerto Rico manatees by dates

COMPLAINT

12

certain in compliance with the MMPA and consistent with this Court's findings, with proposed and final stock assessment reports published as appropriate under the MMPA;

3. Award Plaintiffs their costs of litigation, including reasonable attorneys fees pursuant to the Equal Access to Justice Act; and

4. Grant Plaintiffs such other relief as the Court deems just and proper.

DATE: October 4, 2007                    Respectfully Submitted,

*[signature]*

Brendan Cummings (CA Bar No. 193952)
Center for Biological Diversity
P.O. Box 549
Joshua Tree, CA 92252
Phone: (760) 366-2232
Facsimile: (760) 366-2669
Email: bcummings@biologicaldiversity.org

Miyoko Sakashita (CA Bar No. 239639)
Andrea Treece (CA Bar No. 237639)
Center for Biological Diversity
1095 Market St., Suite 511
San Francisco, CA 94103
Phone: (415) 436-9682
Facsimile: (415) 436-9683
Email: miyoko@biologicaldiversity.org
       atreece@biologicaldiversity.org

Attorneys for Plaintiffs